IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PEADAR O'NEILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 50062 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Peadar O'Neill brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying him disability insurance benefits. For the reasons set forth below, the case is remanded.

### I. BACKGROUND[1]

On February 24, 2011, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Mr. O'Neill's request for benefits. R. 169-93. At the time of the hearing, Mr. O'Neill was forty-three years old, six-feet, two-inches tall, and weighed 250 pounds. R. 172, 326.

In October 2006, Mr. O'Neill went to the emergency room complaining of severe back pain. R. 557. The attending physician diagnosed the pain as musculoskeletal and prescribed Mr. O'Neill a fentanyl pump to alleviate his pain. R. 555. Examinations in November 2009 revealed distal weakness, bilateral edema

---

[1] The following facts are only an overview. A more complete summary is set forth in the plaintiff's opening brief and the administrative record.

1

and loss of certain reflexes to Mr. O'Neill's lower extremities. R. 1055, 1067. In 2010, a CT myelogram revealed multilevel mild disc disease from L1-2 through L5-S1. R. 1655.

In December 2008, Mr. O'Neill went to the emergency room for psychiatric treatment because his chronic back pain and other medical issues caused his depression to worsen to the point that he attempted suicide. R. 688, 860. He was diagnosed with major depressive disorder and alcohol abuse and was assigned a Global Assessment of Functioning (GAF) score of 30. R. 738. Soon after seeking treatment, Mr. O'Neill attempted suicide again. R. 863.

In May 2009, Mr. O'Neill began treating with a psychologist, Dr. Amy Jakobsen, on a weekly basis to address his mental health and substance abuse issues. R. 885, 947, 952-56. In July 2009, Dr. Jakobsen submitted a "Medical Source Statement" on the severity of Mr. O'Neill's mental impairment (R. 885-91), and assigned him a GAF score of 45 (R. 885). Based on her sessions with Mr. O'Neill, Dr. Jakobsen found that his mental impairments produced confusion, difficulty concentrating, difficulty remembering, and social isolation. R. 885. She reported that Mr. O'Neill's substance dependence was in full remission. R. 886. In relation to Mr. O'Neill's ability to do unskilled work, Dr. Jakobsen found that his mental impairments resulted in his being unable to meet competitive standards for remembering work-like procedures, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and dealing with normal work stress. R. 887. Mr. O'Neill was seriously limited with regard to

2

maintaining attention for a two-hour period, maintaining regular attendance, sustaining an ordinary routine without supervision, making simple work-related decision, performing at a consistent pace without an unreasonable number of rest periods, receiving instruction and criticism, and carrying out detailed instructions. *Id.* Dr. Jakobsen also reported three episodes of decompensation with the last year, noting that Mr. O'Neill had suicide attempts in December 2008 and January 2009. R. 889.

In October 2009, Mr. O'Neill was admitted for emergency psychiatric treatment due to suicidal ideation. R. 1027. After his release in November 2009, he began treating with a psychiatrist, Dr. Samar Mahmood (R. 1338-39). In September 2010, Drs. Jakobsen and Mahmood issued a joint statement finding that Mr. O'Neill was "unable to cope with long-term demands of sustaining employment due to symptoms of depression." R. 1419. They diagnosed Mr. O'Neill with major depressive disorder and alcohol dependence in early full remission. *Id.* The doctors determined that because Mr. O'Neill had been sober for approximately two years, with two brief relapses, his symptoms of depression and related impairment appeared to be independent of his substance abuse. *Id.* They also stated that Mr. O'Neill attended sessions consistently and was compliant with treatment recommendations. *Id.*

In November 2010, Dr. Mahmood submitted a "Medical Source Statement" and assigned Mr. O'Neill a GAF of 40. R. 1503. Based on Mr. O'Neill's mental impairments, Dr. Mahmood found him unable to meet competitive standards with

3

regard to performing unskilled work at a consistent pace and dealing with normal work stress. R. 1505. Mr. Mahmood also found Mr. O'Neill seriously limited in his ability to perform numerous other work-related tasks. *Id.*

On April 14, 2011, the ALJ issued her ruling finding that Mr. O'Neill was not disabled. R.146-61. The ALJ found that Mr. O'Neill had multiple severe impairments, including gout, status post-fusion, lumbar degenerative disc disease, hypercoagulation disorder secondary to factor V Leiden, seizure/syncope episodes, neuropathy secondary to alcohol abuse, depressive disorder, anxiety disorder, and history of alcohol abuse. R. 148. The ALJ found Mr. O'Neill's impairments did not meet or medically equal a listing impairment. R. 150. The ALJ then concluded Mr. O'Neill had the residual functional capacity ("RFC") to perform sedentary work subject to the following limitations: lift no more than ten pounds; stand or walk for no more than two hours in an eight-hour workday; sit for no more than six hours in an eight-hour workday with the option of standing for one or two minutes after sitting for one hour; use a cane as needed; never climb ladders, ropes, or scaffolds; occasionally climb stairs or ramps; occasionally stoop, kneel, crouch, or crawl; avoid concentrated exposure to work hazards; limited to work that is simple, unskilled, routine, and repetitive three to four-step tasks that requires occasional interaction with supervisors and co-workers, and no interaction with the public. R. 154-55. Based on the vocational expert's testimony, the ALJ determined that this RFC did not allow Mr. O'Neill to perform his past relevant work, but it did allow him to perform other jobs that existed in the national economy. R. 159-60.

4

## II. LEGAL STANDARDS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## III. DISCUSSION

Mr. O'Neill argues that the ALJ's decision should be reversed or remanded for several reasons. Specifically, Mr. O'Neill argues that the ALJ: 1) improperly weighed the medical opinion evidence of his treating psychologist and psychiatrist from July 2009, September 2010, and November 2010; 2) improperly assessed his RFC; 3) failed to consider his obesity; and 4) improperly assessed his credibility. After reviewing these arguments, the Court finds this case must be remanded because the ALJ failed to properly apply the treating physician rule.

The treating physician rule is based on 20 C.F.R. § 404.1527(c)(2). Under this section, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Id.*; *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).

If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).[2] Failure to apply checklist is reversible error. *Larson v. Astrue*, 615 F.3d

---

[2] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

6

744, 751 (7th Cir. 2010) (ALJ disregarded checklist); *Moss*, 555 F.3d at 561 ("the choice to accept one physician's opinions but not the other's was made by the ALJ without any consideration of the factors outlined in the regulations"). Similarly, ALJs commit reversible error by simply stating that they considered the checklist without showing in their decisions that they did, in fact, consider them. *See Campbell*, 627 F.3d at 308 ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with [the checklist]. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."). In other words, ALJs must show their work.

Here, in making an RFC assessment, the ALJ rejected three opinions from Mr. O'Neill's two treating doctors, Dr. Jakobsen and Dr. Mahmood. Because they are treating doctors, the ALJ was required to determine whether their medical opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and were "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). In rejecting the opinions, however, the ALJ failed to fully explain why they should not be given controlling weight, and furthermore, she did not articulate her reasoning in relation to the checklist of factors when determining what weight they should be given. *See id.*

In relation to Dr. Jakobsen's July 2009 opinion, the ALJ gave the opinion no weight "as it appears that she had held sessions with the claimant for only two months and that she relied primarily on the claimant's self-reporting of symptoms and diagnoses." R. 157. Despite references in Dr. Jakobsen's opinion that she

7

relied on many of her own observations of Mr. O'Neill's impairments, the ALJ rejected her opinion for relying on subjective complaints. R. 885, 891. The ALJ also determined that she would give the opinion no weight without first determining whether the opinion was inconsistent with other substantial evidence in the record. See *Clifford v. Apfel*, 227 F.3d 863, 870-71 (7th Cir. 2000) (reversing and remanding because the ALJ rejected a treating physician's opinion without citing any conflicting evidence in the record). Even assuming *arguendo* that a psychologist's reliance on self-reporting was proper justification for not according controlling weight, the ALJ failed to provide "good reasons" for affording the opinion no weight. *See* 20 C.F.R. § 404.1527(c)(2) (requiring "good reasons" for the weight given to a treating source's opinion). The ALJ's brief mention of the length of treatment made no attempt to discuss other aspects of the regulations used to evaluate a treating physician's opinion under the rule, including the physicians' specialties. *See* 20 C.F.R. § 404.1527(c)(2).

Similarly, the ALJ improperly rejected Dr. Jakobsen and Dr. Mahmood's September 2010 opinion and Dr. Mahmood's mental functional capacity assessment from November 2010. The ALJ gave no weight to the September 2010 opinion because she found that the record contradicted the doctors' claims that Mr. O'Neill had been sober two years and was compliant with treatment recommendations. The ALJ also rejected Dr. Mahmood's November 2010 opinion, without specifying what weight she gave to the opinion, because it did not account for Mr. O'Neill's history of alcohol abuse and the reported episodes of decompensation were not

8

supported by the record. In rejecting these opinions, the ALJ mainly relied on an attending physician's "Discharge Summary" from July 2009. R. 158. The report stated that when Mr. O'Neill was admitted to the hospital for seizures and altered mental state, his "dizziness and forgetfulness along with memory loss was most likely related to the alcohol." R. 911.

The ALJ appeared to give considerable weight to this statement because the hospitalization occurred "just two months" before the September 2010 opinion. R. 158. However, Mr. O'Neill's July 2009 hospitalization occurred *one year and two months* before the report. The ALJ also relied on the statement despite there being no indication whether the attending physician attributed Mr. O'Neill's impairments to his past or current alcohol use. R. 911. The government's position that it was reasonable to infer Mr. O'Neill's current alcohol use from this statement is not convincing. The meaning of the physician's statement is unclear, especially in light of another doctor's statement from the same time period, where he reported that Mr. O'Neill's memory problems were related to his "history of alcoholism[.]" R. 910. Moreover, despite the government's correct assertion that the ALJ was not required to give any weight to the doctors' September 2010 determination that Mr. O'Neill was disabled, this did not excuse the ALJ from applying the checklist factors to determine what weight to give the opinions. *See* 20 C.F.R. § 404.1527(d)(1) (the Commissioner is charged with determining the ultimate issue of disability); *Collins v. Astrue*, 324 F. App'x 516, 520-21 (7th Cir. 2009) (explaining that although the ultimate issue of disability is determined by the Commissioner, that does not

9

exempt the ALJ from giving good reasons why a treating physician's opinion was not credited (citing *Snell v. Apfel*, 177 F. 3d 128, 134 (2nd Cir. 1999)).

Overall, it is difficult to glean from the record precisely why the ALJ did not to give controlling weight to the opinions of Mr. O'Neill's treating doctors. The ALJ further rejected these opinions without providing sufficient reasons for her rationale as related to the checklist. In addition to rejecting Mr. O'Neill's treating doctors' opinions, the ALJ also gave little weight to Mr. O'Neill's treating neurosurgeon, no weight to the State agency medical consultant's opinions, and found Mr. O'Neill's testimony only partially credible. R. 157-58.

In light of rejecting the majority of the evidence presented, it is unclear how the ALJ determined Mr. O'Neill's RFC. *See Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010) (when the ALJ rejects opinions from the treating physicians, it leaves an "evidentiary deficit" that the ALJ may not fill with his own lay opinion of the RFC). In particular, it is unclear how the ALJ determined that Mr. O'Neill could stand or walk for no more than two hours in an eight-hour workday, when she found: 1) "no objective evidence that presents the claimant as having limits on how long he can walk, stand, or sit[;]" and 2) Mr. O'Neill's testimony only partially credible. R. 154, 157. Even if the ALJ relied on Mr. O'Neill's testimony, as the government suggests, Mr. O'Neill testified that he could only walk one block before experiencing excruciating pain and stand ten minutes at a time. R. 181-82. This testimony alone does not support the ALJ's assessment. Furthermore, the ALJ failed to offer an adequate discussion of the evidence that led to her RFC

determination. This prevents the Court from evaluating whether the assessment is supported by substantial evidence. *See Suide*, 371 Fed. App'x at 690 (requiring the ALJ's RFC determination to be based on substantial evidence). The ALJ failed to build a "logical bridge" from the evidence to her conclusion to enable this Court to trace the path of her reasoning. *Roddy v. Astrue*, 705 F. 3d 631, 636 (7th Cir. 2013).

Therefore, the case is remanded for the ALJ to evaluate whether the opinions of Mr. O'Neill's treating doctors should be accorded controlling weight. Even if the opinions do not warrant controlling weight, they must be weighed as the regulations prescribe under Section 1527(c)(2). Upon remand, the ALJ should also explore Mr. O'Neill's remaining claims regarding the assessment of his RFC, the limitations imposed by his obesity, and the determination of his credibility.

## IV. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment (Dkt. 23) is granted, and the government's motion (Dkt. 33) is denied. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: December 12, 2014    By: _____
Iain D. Johnston
United States Magistrate Judge